UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HON. JENNIFER CHOE-GROVES, JUDGE

_____

SXP SCHULZ XTRUDED PRODUCTS LLC,

                          Plaintiff,

                  v.

UNITED STATES,

                       Defendant.

_____

Court No. 22-00136

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

# **TABLE OF CONTENTS**

BACKGROUND ...................................................................................................2

    A.  Importers Determine When and Whether to Use a Granted Exclusion or Request a Refund................................................................................3

    B.  The Same Five Entries Are At Issue In This Case And The Section 1581(a) Case................................................................................................4

ARGUMENT .......................................................................................................6

I.   THIS CASE SHOULD BE DISMISSED BECAUSE COMMERCE PROVIDED A CORRECTED EXCLUSION, CBP ISSUED A REFUND ON THE SINGLE TIMELY PROTESTED ENTRY, AND SXP'S LIQUIDATIONS AS TO THE REMAINING ENTRIES ARE FINAL ....................................................6

II.  THE COURT'S SECTION 1581(a) JURISDICTION WAS MANIFESTLY ADEQUATE AND PRECLUDES SXP'S INVOCATION OF RESIDUAL JURISDICTION UNDER SECTION 1581(i) TO OBTAIN A REFUND...................8

    A.  SXP Obtained The Full Refund To Which It Was Entitled In Its Section 1581(a) Case ...............................................................................10

    B.  SXP's Failure To Timely Protest Was Unrelated To Any Errors In The Decision Memorandum.......................................................................14

III. THE APA DOES NOT PERMIT MONEY JUDGMENTS AS A SUBSTITUTE FOR A SUFFERED LOSS ...............................................................................17

CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Alvarado Cmty. Hosp. v. Shalala*,
  155 F.3d 1115 (9th Cir. 1998) .......................................................................21

*Armendariz–Mata v. U.S. Dep't of Justice, Drug Enforcement Admin.*,
  82 F.3d 679 (5th Cir. 1996) ..........................................................................20

*ARP Materials, Inc. v. United States*,
  47 F.4th 1370 (Fed. Cir. 2022) .......................................................... 12-14, 17

*ARP Materials, Inc. v. United States*,
  520 F.Supp.3d 1341 (Ct. Int'l Trade 2021) ..................................................13

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ......................................................................................20

*Carbon Activated Corp. v. United States*,
  6 F. Supp. 3d 1378 (Ct. Int'l Trade 2014), *aff'd*,
  791 F.3d 1312 (Fed. Cir. 2015). ...................................................................17

*Dep't of the Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ......................................................................................20

*Harmon v. Thornburgh*,
  878 F.2d 484 (D.C. Cir. 1989).......................................................................18

*Int'l Custom Prod., Inc. v. United States*,
  467 F.3d 1324 (Fed. Cir. 2006) .....................................................................14

*Juice Farms, Inc. v. United States*,
  68 F.3d 1344 (Fed. Cir. 1995) .......................................................................13

*Maryland Dep't of Human Res. v. Dep't of Health & Human Servs.*,
  763 F.2d 1441 (D.C. Cir. 1985)......................................................................20

*Michael Simon Design, Inc. v. United States*,
  609 F.3d 1335 (Fed. Cir. 2010) .....................................................................19

*Motion Systems Corp. v. Bush*,
  342 F. Supp. 2d 1247 (Ct. Int'l Trade 2004), *aff'd*,
  437 F.3d 1356 (Fed. Cir. 2006) .....................................................................18

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ........................................................................................18

*Palisades Gen. Hosp. v. Leavitt*,
   426 F.3d 400 (D.C. Cir. 2005)............................................................21

*PPG Inds., Inc. v. United States*,
   52 F.3d 363 (D.C. Cir. 1995)............................................................21

*Shinyei Corporation of America v. United States*,
   355 F.3d 1297 (Fed. Cir. 2004) ....................................................... 7-8

*Sumecht NA, Inc. v. United States*,
   923 F.3d 1340 (Fed. Cir. 2019) .........................................................7

*Sunpreme Inc. v. United States*,
   892 F.3d 1186 (Fed. Cir. 2018) ........................................................12

*Sunpreme Inc. v. United States*,
   946 F.3d 1300 (Fed. Cir. 2020) ........................................................11

*SXP Schulz Xtruded Products LLC v. United States*,
   Court No. 21-00597 ............................................................... *passim*

*VoestAlpine USA Corp. v. United States*,
   578 F. Supp. 3d 1263 (Ct. Int'l Trade 2021) ......................................20

*Xerox Corp. v. United States*,
   289 F.3d 792 (Fed. Cir. 2002) ..........................................................10

## Harmonized Tariff Schedule of the United States

Subheading 7218.99.00..................................................................4, 14

## Statutes

5 U.S.C. §§ 702-706 ................................................................ 18-20

19 U.S.C. § 1504................................................................ *passim*

19 U.S.C. § 1514................................................................ *passim*

19 U.S.C. § 1675...........................................................................7

28 U.S.C. § 1581................................................................ *passim*

28 U.S.C. § 2631........................................................................18

28 U.S.C. § 2636..........................................................................9

28 U.S.C. § 2640(e) ....................................................................18

**Rules**

USCIT R. 12(b)(1) ................................................................................................1

USCIT R. 12(b)(6) ................................................................................................1

**Regulations**

15 C.F.R. Pt. 705, Supp. 1 (h)(3)(ii) ...................................................................3

Adjusting Imports of Steel Into the United States,
   Pres. Proc. 9705 (March 8, 2018)........................................................... *passim*

Adjusting Imports of Steel Into the United States,
   Pres. Proc. 9777 of Aug. 29, 2018,
   83 Fed. Reg.45,025 (Sept. 4, 2018) (amending cl. 3 of Pres. Proc. 9705) ............. *passim*

**Other Authorities**

1980 U.S.C.C.A.N. 3729 .....................................................................................19

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
   CSMS No. 18-000352, Submitting Imports of Products Excluded from Duties on
   Imports of Steel or Aluminum (May 21, 2018) ..................................................3

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
   CSMS No. 18-000378, UPDATE: Submitting Imports of Products Excluded from
   Duties on Imports of Steel or Alumin (June 12, 2018)................................. 3-4

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
   CSMS No. 39633923, UPDATE: Submitting Imports of Products Excluded from
   Duties on Imports of Steel or Aluminum (Sept. 3, 2019)............................ 3-4

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
   CSMS No. 42566154, Section 232 and Section 301 – Extensions Requests, PSCs,
   and Protests (May 1, 2020) .....................................................................4, 10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HON. JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| ─────────────────────────── | : | |
| SXP SCHULZ XTRUDED PRODUCTS LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | Court No. 22-00136 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| ─────────────────────────── | : | |

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Defendant, United States (the Government), submits this reply memorandum in further support of its motion, pursuant to Rules 12(b)(1) and (b)(6) of the Rules of the United States Court of International Trade, to dismiss this action for mootness, lack of subject matter jurisdiction, or failure to state a claim for which relief can be granted.

Plaintiff SXP Schulz Xtruded Products LLC (SXP) seeks to invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1581(i) to obtain a refund of the duties it paid pursuant to Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862 (Section 232), on four of its five entries.  Compl., Prayer for Relief ¶ B (Dkt. No. 2). This Court, however, lacks jurisdiction because the entries were already properly the subject of a separate action brought pursuant 28 U.S.C. § 1581(a) in *SXP Schulz Xtruded Products LLC v. United States*, Court No. 21-00597.  Because SXP failed to timely protest the liquidation of four of the five entries, which would have provided for jurisdiction and relief under section 1581(a), this action must be dismissed.  Moreover, with respect to the one entry that SXP timely protested, U.S. Customs and Border

Protection (CBP) has already refunded SXP those duties.  Stipulated Judgment, *SXP Schulz Xtruded Products LLC v. United States*, Court No. 21-00597 (Dkt. No. 10); Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.  With respect to the remaining four entries that SXP failed to timely protest, SXP improperly attempts to circumvent jurisdiction under section 1581(a).  Because this Court could have provided SXP with manifestly adequate relief pursuant to section 1581(a), this action must be dismissed for lack of jurisdiction.

In addition, because SXP acknowledges that its request in this case for a corrected Decision Memorandum from the U.S. Department of Commerce (Commerce) has already been granted, Pl.'s Resp. to Def.'s Mot. to Dismiss at 3; Compl., Prayer for Relief ¶ A, which is the only relief available to SXP pursuant to this Court's section 1581(i) jurisdiction, this case should also be dismissed because it is now moot.

Finally, to the extent that SXP now seeks to rebrand its request for declaratory or injunctive relief directing a refund of duties in this APA case as request for a "money judgment," in the vein of compensatory damages, SXP has failed to state a claim.

## BACKGROUND

Our opening brief set forth a discussion concerning Section 232 duties and the general facts of this case, which SXP explicitly accepts in its response brief.  Pl's Resp. to Def.'s Mot. to Dismiss at 1 (Dkt. No. 20).  We do not repeat the complete factual discussion here, but we note and summarize here and throughout our brief certain inaccurate or misleading allegations made by SXP that warrant clarification.

### A.  Importers Determine When and Whether to Use a Granted Exclusion or Request a Refund

Granted exclusion requests are not self-executing.  Without an affirmative request by the importer, a granted exclusion request does not cause or result in a refund of the

deposited Section 232 duties. 15 C.F.R. Pt. 705, Supp. 1 (h)(2)(iii)(B) ("The U.S. Department of Commerce does not provide refunds on tariffs.  Any questions on the refund of duties should be directed to CBP.").  An importer seeking a refund of its deposited Section 232 tariffs "shall provide any information that may be required, and in such form, as is deemed necessary by CBP."  Proclamation 9705, Annex (U.S. Note 16(d)); *see* 15 C.F.R. Pt. 705, Supp. 1 (h)(3)(ii) ("Other agencies of the U.S. Government, such as CBP, will take any additional steps needed to implement an approved exclusion request."); *id.* ("Individuals or organizations whose exclusion requests are approved must report information concerning any applicable exclusion in such form as CBP may require.").  This information enables "CBP to determine whether an import is within the scope of an approved exclusion request."  *Id.*

CBP has issued a series of informative messages to the importing community via its Cargo Systems Messaging Service (CSMS).  These messages specifically provide information to the Section 232 community concerning the available procedures for claiming an approved Section 232 exclusion at entry.  They also provide specific information for seeking refunds of Section 232 estimated duty deposits, or of liquidated duties, when exclusions that are requested prior to entry are approved after entry is made and estimated duties are deposited or liquidated duties are paid.  *See* CSMS No. 18-000352 (May 21, 2018); CSMS No. 18-000378 (June 12, 2018); CSMS No. 39633923 (Sept. 3, 2019); CSMS No. 42566154 (May 1, 2020) ("Section 232 and Section 301 – Extensions Requests, PSCs, and Protests").

When an exclusion request is granted after a product has been entered and the duties already deposited, "importers may submit" a post-summary correction (PSC) "to

request a refund on applicable previous imports of excluded products[.]"  CSMS No. 18-000378 (June 12, 2018).  If an exclusion request is pending, an importer may ask to extend the liquidation of an entry that may be impacted.  CSMS No. 42566154.  CBP further advises that, in instances where an entry that may qualify for a granted exclusion "has already liquidated, importers may protest the liquidation."  *Id.*  Moreover, consistent with the finality of liquidation rule pursuant to 19 U.S.C. § 1514(a)(2) and Presidential Proclamation 9777 of August 29, 2018, CBP also reminded importers that retroactive product exclusions granted by Commerce could be used only for "unliquidated entries and for entries that are liquidated but where the liquidation is not final and the protest period has not expired," so long as the importer took action to preserve its rights, either by filing a PSC to its entry, or a timely protest.  CSMS No. 42566154 (May 1, 2020); *see also*, Pres. Proc. 9777 of Aug. 29, 2018, cl. 5, 83 Fed. Reg.45,025 (Sept. 4, 2018) (amending cl. 3 of Pres. Proc. 9705).

Unless liquidation is extended under 19 U.S.C. § 1504(b), or suspended pursuant to statute or court order, CBP generally is required to liquidate an entry within one year of the date of the entry.  *See* 19 U.S.C. §§ 1504(a)(1), (b)(2) (stating that importers, with good cause, may request the extension of the statutory period in which to liquidate an entry for up to four years from the date of the entry).

### B.  The Same Five Entries Are At Issue In This Case And The Section 1581(a) Case

SXP imported the five entries at issue between April 30, 2019, and June 15, 2019. These entries were made a few days after SXP had requested the relevant exclusion, and before Commerce had made a decision on the exclusion request.  Pl's Resp. to Def.'s Mot to Dismiss at 1.  SXP imported the merchandise in the five entries under subheading

7218.99.00 of the Harmonized Tariff Schedule of the United States (HTSUS) and,

because Commerce had not yet made a determination on SXP's recently filed exclusion

request, SXP paid the twenty-five percent *ad valorem* duties required pursuant to

Section 232.  Protests, *SXP Schulz Xtruded Products LLC v. United States*, Court No. 21-

00597 (ECF no. 7-1).  SXP never requested an extension of the time for liquidation from

CBP.  Pl.'s Resp. to Def.'s Mot. to Dismiss at 17.  Accordingly, between March 27,

2020, and May 8, 2020, CBP auto-liquidated the five entries with the Section 232 tariffs

under subheading 7218.99.00, as entered by SXP.  *See* Court no. 21-00597, ECF no. 1

(Summons).[1]  At no time prior to liquidation did SXP notify CBP that it had obtained or

even so much as requested an exclusion from Commerce.

   CBP first learned that SXP was seeking a duty refund after the entries had

liquidated, in SXP's protest submitted on November 4, 2020.  Pl.'s Resp. to Def.'s Mot.

to Dismiss at 2.  By that date, "SXP concedes that only one of the five entries the broker

protested was within the 180-day statutory time limit set by 19 U.S.C. § 1514(c)(3)."  *Id.*

By virtue of its protest, SXP obtained a refund for the duties it paid with respect to the

one timely-protested entry.  Stipulated Judgment, Court No. 21-00597 (Dkt. No. 10).

   For the reasons explained in detail below, these facts are fatal to SXP's claims in

this case.

---

[1]  In the Summons filed in Court No. 21-00597, SXP identifies the date of
liquidation for entry no. U5130792547 as March 10, 2020, but CBP's system indicates
that the entry liquidated on April 10, 2020.  The difference in liquidation date is not
material to any of the issues in this action.

<u>**ARGUMENT**</u>

I.     **THIS CASE SHOULD BE DISMISSED BECAUSE COMMERCE PROVIDED A CORRECTED EXCLUSION, CBP ISSUED A REFUND ON THE SINGLE TIMELY PROTESTED ENTRY, AND SXP'S LIQUIDATIONS AS TO THE REMAINING ENTRIES ARE FINAL**

Any relief that SXP could obtain in this section 1581(i) action has already been provided. Here, SXP's challenge to Commerce's July 26, 2020 decision was fully addressed in the corrected decision memorandum issued May 11, 2022. In the section 1581(a) case, SXP challenged CBP's protest denials with respect to the five entries and received a refund of duties on the one timely protested entry. The liquidations of the remaining four untimely protested entries are final. Accordingly, all the relief to which SXP is entitled has already been provided in this case and in the section 1581(a) case, and this case should be dismissed for mootness and failure to state a claim for which relief can be granted.

The Section 232 regime establishes certain conditions and limitations, including that granted exclusions are applicable only to entries whose liquidations are not final. Pres. Proc. 9777 of Aug. 29, 2018, cl. 5, 83 Fed. Reg. 45,025 (Sept. 4, 2018) (amending cl. 3 of Pres. Proc. 9705). Importers are on notice as to the requirement and procedures for preserving the liquidation status of an entry they hope to exclude from the Section 232 tariffs and are solely responsible for initiating those procedures. And, where an importer believes that CBP has either improperly liquidated an entry or improperly denied a protest challenging the liquidation, the importer may seek timely review of that decision in this Court pursuant to section 1581(a).

In this case, where Commerce has corrected the submission date of the relevant exclusion decision, and SXP successfully recovered the duties it paid for the one timely

protested liquidation in its section 1581(a) action, this case is moot, no further relief can be granted, and any decision by this Court regarding the four similar entries that were not timely protested would amount to an impermissible advisory opinion.  The remedy available in this case is limited and does not include an order directing CBP to reliquidate entries, nor does SXP seek the remedy of reliquidation.  *See, generally,* Compl., Prayer for Relief.

We recognize that the Federal Circuit in *Shinyei Corporation of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), rejected the Government's reliance on the rule of finality of liquidation, as applied to actions brought under section 1581(i) alleging a violation of 19 U.S.C. § 1675(a)(2)(C).  We further recognize that, while we opposed the outcome in *Shinyei*, that decision binds this Court and its litigants.

Additionally, we recognize that, in the past, the Government has relied on *Shinyei* for the proposition that reliquidation is available in appropriate circumstances and did not seek to challenge the applicability of that decision in those cases.  *See, e.g., Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir. 2019).  However, in examining the availability of reliquidation under *Shinyei* to the facts here and considering the continuing uncertainty surrounding the scope of *Shinyei* and its application, we submit that so-called "*Shinyei* relief" does not apply here.

"*Shinyei* relief" is best understood as that relief which is necessary to protect a judgment of this Court or, alternatively, as relief that is limited to circumstances where Commerce's statutory issuance of liquidation instructions are clearly inconsistent with its own final determination.  Even if this Court disagrees that *Shinyei* should be limited to its specific facts, the equitable relief outlined in *Shinyei* would still not be available in this

7

case.  The plaintiff in *Shinyei*, in contrast to SXP, was not a party that "slept on its rights," *Shinyei*, 355 F.3d at 1309, while here SXP failed to diligently protect its rights with respect to four of the five entries.

Specifically, SXP failed to abide by the exclusion procedures directed by the President and implemented by the Department of Commerce and CBP.  The President and the applicable regulations could not be more clear that the exclusion process does not apply to a refund of duties on already-liquidated entries where those liquidations have become final and non-reviewable.  *See* Pres. Proc. 9777 of Aug. 29, 2018, cl. 5, 83 Fed. Reg.45,025 (Sept. 4, 2018) (amending cl. 3 of Pres. Proc. 9705) (Exclusions only apply to entries "with respect to which liquidation is not final.")  Here, SXP deposited the Section 232 duties at entry as required by law and had multiple options available to it to prevent liquidation from becoming final.  Thus, regardless of the scope and application of *Shinyei*, it does not extend to the facts here.

SXP has received all the relief it is entitled to in this (i) case, and in the (a) case, and any attempt by SXP to additional judicial relief should be rejected.

**II.   THE COURT'S SECTION 1581(a) JURISDICTION WAS MANIFESTLY ADEQUATE AND PRECLUDES SXP'S INVOCATION OF RESIDUAL JURISDICTION UNDER SECTION 1581(i) TO OBTAIN A REFUND**

The adequacy of section 1581(a) jurisdiction is demonstrated by SXP's own case filed in this Court, *SXP Schulz Xtruded Products LLC v. United States*, Court No. 21-00597.  SXP challenged the denial of the protest of its five entries, which resulted in a refund of Section 232 duties for the one entry that was timely protested and for which liquidation was not final.

As explained in detail in our moving papers, with respect to CBP's decisions as to "the classification and rate and amount of duties chargeable" and "the liquidation or

reliquidation of an entry," liquidation is "final and conclusive" 180 days from the date of liquidation, unless the importer files a protest.  19 U.S.C. §§ 1514(a)(2), (a)(5), (c)(3). Where an entry liquidates without the benefit of an exclusion, the importer may view that as an error in the liquidation decision.  If an importer files a protest that CBP denies, the importer can commence a civil action challenging the denial, pursuant to 28 U.S.C. § 1581(a), within 180 days from the mailing of the notice of the denial.  28 U.S.C. § 2636(a)(1).  If the importer prevails, this Court possesses the authority to correct any errors and order the reliquidation of entries covered by the denied protest pursuant to 28 U.S.C. § 1581(a), because the filing of a timely protest and the filing of a timely summons prevent the liquidation from becoming final.  *See* 19 U.S.C. § 1514(a). However, if an importer sits by and does nothing to challenge or prevent liquidation, the tariff classification and rate and amount of duties chargeable that CBP fixes upon the liquidation of an entry of imported merchandise becomes "final and conclusive" 180 days from the date of liquidation.  19 U.S.C. § 1500(b)-(d).

In the realm of Section 232, in the event that Commerce denies an exclusion request, or issues a faulty decision memorandum, an importer has the right to challenge that decision by filing a civil action pursuant to 28 U.S.C. § 1581(i).  However, unless the importer obtains an extension from CBP, or the Court issues an injunction suspending liquidation pending the Court's final decision, CBP will generally liquidate the importer's entries within the applicable statutory deadlines for liquidation.  *See* 19 U.S.C. § 1504(a)(1), 1504(d).

### A.  SXP Obtained The Full Refund To Which It Was Entitled In Its Section 1581(a) Case

SXP filed two actions, one under subsection (a) to prevent the liquidations of its entries from becoming final, and a second under subsection (i) to challenge Commerce's actions with respect to the exclusion.  Both cases have played out to conclusion.  As a result of this case pursuant to the Court's residual subsection (i) jurisdiction, SXP has now obtained a corrected exclusion from Commerce that it can apply to any applicable entries for which liquidation has not yet become final.  And, as a result of its subsection (a) case, SXP applied the corrected exclusion to obtain a complete refund for the entry that it had timely protested and summonsed to Court.

Under this statutory and regulatory framework, it is solely the importer's responsibility to take protective measures to prevent its entries from finally liquidating with the assessment of Section 232 duties.  For example, if an importer obtains an exclusion, and an entry that would be covered by that exclusion has not yet liquidated, then the importer can file a Post-Summary Correction (PSC) notifying CBP that it seeks the benefit of the exclusion.  *See* CSMS No. 42566154 (May 1, 2020).  If the exclusion request is pending, an importer may also seek an extension of liquidation under 19 U.S.C. § 1504(b).

Where an entry has already liquidated and Commerce has not yet made a decision on the pending exclusion request, as was the case here, importers are advised to timely protest the liquidation.  *Id.*; 19 U.S.C. § 1514(a)(2), (c)(3).  Filing a protest prevents the classification and rate and amount of duties that are applied by CBP at liquidation from becoming final.  *See id.*; *Xerox Corp. v. United States*, 289 F.3d 792, 795 (Fed. Cir. 2002) (Customs "may make protestable decisions in the process of implementing another

10

agency's instructions or orders."), overruled on other grounds by *Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020).

In this case, SXP had options that it could have employed pre-liquidation as well as post-liquidation to prevent the liquidation of its entries from becoming final. First, SXP could have asked CBP to extend liquidation while it waited for Commerce's response. *See* 19 U.S.C. § 1504(b)(2) (providing that the Secretary of the Treasury may extend the period in which to liquidate an entry if "the importer of record . . . requests such extension and shows good case therefor."); *see also* CBP Cargo Systems Messaging Service, CSMS No. 42566154, "Section 232 and Section 301 – Extensions Requests, PSCs, and Protests" (May 1, 2020) (advising that, "in situations where the importer has requested a product exclusion and the request is pending with [Commerce], the importer . . . may submit a request to extend the liquidation of impacted unliquidated entry summaries to CBP"). Second, SXP could have filed a timely protest.

Thus, SXP had a number of options, but what SXP could not do was to permit the liquidations to become final and nonreviewable, and then seek review in this Court subject to the Court's residual jurisdiction under section 1581(i). Where Commerce ultimately grants an exclusion, but all applicable entries are liquidated and no protest has been filed within 180 days of liquidation, there is no entry to which that exclusion can be applied because liquidation is "final and conclusive." *See* CSMS No. 42566154 (May 1, 2020); Pres. Proc. 9777 of Aug. 29, 2018, cl. 5, 83 Fed. Reg. 45,025 (Sept. 4, 2018) (amending cl. 3 of Pres. Proc. 9705).

Despite SXP's success with its one timely protested entry, SXP argues that a protest of its entries is somehow inadequate and futile. Pl.'s Resp. to Def.'s Mot. to

Dismiss at 11-12.  SXP acknowledges that "[a]n effort to secure a remedy is manifestly inadequate when that effort is 'an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'"  *Id.* at 12 (quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193-94 (Fed. Cir. 2018)).  It is well-established that missing the deadline to file a valid protest does not make a protest "futile."  *See ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022).

Here, SXP falsely claims that its "prospects for relief under § 1581(a) [are] 'incapable of producing any result' and generally an exercise in futility."  Pl.'s Resp. to Def.'s Mot. to Dismiss at 12.  To the contrary, SXP's efforts to secure a remedy via the statutory protest mechanism were clearly successful and not an exercise in futility given that SXP obtained a refund for the entry that it timely protested.  Not only is SXP's position belied by the fact that it received a refund for its timely protested entry, Federal Circuit precedent also plainly requires that refunds based on a duty exclusion for a liquidated entry must flow from the protest mechanism.  *ARP Materials*, 47 F.4th 1370.

In *ARP Materials* the Federal Circuit confirmed that protective protests are necessary to preserve an importer's right to judicially challenge a liquidation that the importer believes was erroneous.  SXP contends that the facts of this case are somehow different than *ARP Materials* because here the Government issued a decision memorandum with an erroneous date, while in *ARP Materials* the importer failed "to properly claim the exclusion at the time of entry, in a post-summary correction, or in a protest."  Pl.'s Resp. to Def.'s Mot. to Dismiss at 16.  SXP is mistaken, and the cases are essentially identical with respect to their operative facts.

In *ARP Materials*, as here, the Government approved an exclusion after entries were made and after some entries had liquidated. *ARP Materials*, 47 F.4th at 1375-76. Thus, the importers in *ARP Materials*, just like SXP, could not have claimed the benefit of the not-yet-existing exclusion at the time of entry. *Id.* And, just like the *ARP Materials* plaintiffs, SXP had to administratively delay liquidation or file a timely protest to claim the benefit of the later-granted exclusion. *Id.* at 1378-79. As in *ARP Materials*, SXP failed to timely protest with respect to some of the entries. *Id.*

Furthermore, in *ARP Materials*, liquidation of two entries was already final and non-reviewable by the time the Government granted the applicable exclusion. *ARP Materials, Inc. v. United States*, 520 F.Supp.3d 1341, 1353 (Ct. Int'l Trade 2021). In other words, in contrast to this case, at no time during the 180-day protest period did the importer have a valid exclusion that could be claimed in a protest. Nevertheless, the Federal Circuit held that in order to obtain a refund, the importer was required to have:

> timely requested an extension of the liquidation deadlines for the entries at issue, [so that the importer] would have had the opportunity to request a refund by filing a Post Summary Correction "no later than 15 days before the extended date of liquidation." U.S. Customs & Border Prot., CSMS No. 19000260, Section 301 Products Excluded from Duties - Liquidation Extension Request (2019) (providing instructions for importers that "have a pending product exclusion request with USTR, or are importing a product that is covered by such a pending exclusion request, and [who] are concerned that a corresponding entry may liquidate before USTR renders a decision on the exclusion request"). Thus, [the importer] likewise could have had the opportunity to challenge Customs' classification decisions had the importer done so promptly. *See Juice Farms*, 68 F.3d at 1346 ("Customs posted bulletin notices of these liquidations at the customshouse. The bulletin notices supply sufficient notice and thus trigger the ninety-day period for protests. . . . Juice Farms, the importer, bears the burden to check for posted notices of liquidation and to protest timely. Juice Farms cannot circumvent the timely protest requirement by claiming that its own lack of

> diligence requires equitable relief under 28 U.S.C. § 1581(i)."
> (citations omitted)); *cf. Int'l Custom Prods.*, 467 F.3d at 1328
> ("Plaintiff cannot take it upon itself to determine whether it would
> be futile to protest or not.  In order to protect itself, a protest should
> have been filed . . . .").

*ARP Materials*, 47 F.4th at 1380.  If the plaintiff in *ARP Materials* could not recover

under section 1581(i) due to its failure to timely protest to obtain the benefit of an

exclusion that was determined after the protest period had expired, then certainly SXP

cannot recover under section 1581(i) for its failure to timely protest or extend the

liquidation period to obtain the benefit of SXP's own exclusion request that was pending

and then issued during the protest period.

Here, as in *ARP Materials*, SXP had a viable and non-futile protest remedy

available pursuant to section 1581(a) to recover the tariffs paid on its entries but failed to

timely invoke that process.  As in *ARP Materials*, SXP cannot now claim that, due to its

own failure to timely protest four of its five entries, the Court's section 1581(a)

jurisdiction is manifestly inadequate as to those four entries, thereby justifying its effort

to seek relief under section 1581(i).  This argument and effort to bypass this Court's

jurisdictional statutes were squarely considered and rejected by *ARP Materials*.  SXP's

argument is further undercut by the fact that it received a refund for the Section 232

duties it paid on the timely protested entry in its section 1581(a) case.

### B.  SXP's Failure To Timely Protest Was Unrelated To Any Errors In The Decision Memorandum

SXP's assertions that Commerce's errors caused its entries to be subject to

Section 232 duties are baseless.  SXP is correct that Commerce issued a decision

14

memorandum with an incorrect submission date.  Compl. ¶ 17[2].  But this mistake was immaterial to SXP's failure to timely protest or preserve the finality of its entries.  SXP does not dispute that on May 8, 2020, during the 180-day protest period for all five entries, Commerce issued a decision memorandum with the correct submission date.  *See* ECF no. 2-1 at 1 (correctly stating "Date submitted: 4/26/2019").  SXP also does not dispute that it was SXP's exclusion request that incorrectly identified the Country of Origin of its supplier companies and, as a result, SXP asked Commerce to revise the decision memorandum to correct SXP's mistake.  *See* Def.'s Mot. to Dismiss at 6.  This fact alone should dispel SXP's contention that a Commerce error caused the entries to liquidate with Section 232 duties.  Nonetheless, SXP's error, just as with any error by Commerce in an intervening decision, was immaterial to SXP's requirement to preserve the reviewability of its entries.  The material fact is that SXP made its exclusion request prior to making these entries and knew at all relevant times that it had not received the decision it hoped for by the time its entries liquidated and became final and unreviewable.  The fact that both parties may have contributed to a delay of the final corrected decision is immaterial.

Neither Commerce's mistake regarding the submission date, nor SXP's error regarding the country of origin of its supplier companies, were the cause of SXP's ineligibility for a refund in this case, nor for the partial refund that it received pursuant to the stipulated judgment in Court No. 21-00597.  In fact, at no time prior to liquidation, or

---

[2] SXP "acknowledges that it misstated the date of the [incorrect submission date provided in Commerce's] decision memorandum as September 4, 2020 in its Complaint [at paragraphs 17, 20, and 24] and that the Government has correctly asserted the correct date to be September 4, 2019."  Pl.'s Resp. to Def.'s Mot. to Dismiss at 6, n.3.  SXP suggests that it may move to amend its complaint to correct the error.  *Id.*

during the 180-day protest period following liquidation, did SXP so much as notify CBP that it had a pending exclusion request or a granted exclusion. Had it done so, SXP could have taken some of the early steps discussed above even prior to receiving the final memorandum decision to preserve its ability to apply an exclusion. Nevertheless, once SXP's entries liquidated, SXP still had procedures available to ensure that it would obtain relief from the liquidation by timely protesting within the 180-day statutory time limit set by 19 U.S.C. § 1514(c)(3). SXP admits that the exclusion it requested on April 26, 2019, was first granted with the correct submission date on May 8, 2020. *See* Compl. ¶¶ 9-10; ECF no. 2-1. That decision memorandum was issued at least four months before the expiration of the protest period for the oldest of the five entries. SXP's admission that "one of the five entries the broker protested was within the 180-day statutory time limit set by 19 U.S.C. § 1514(c)(3)" is fatal to its claim that it would have been futile to timely protest the remaining entries. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.

SXP additionally makes two patently false statements in its response brief. First, SXP falsely contends "that it paid duties because of the incorrect date." Pl.'s Resp. to Def.'s Mot. to Dismiss at 11. As explained above, SXP voluntarily deposited the duties on the merchandise as entered by SXP under subheading 7218.99.00, HTSUS. At the time SXP entered its merchandise beginning April 30, 2019, through June 15, 2019, SXP had just days earlier submitted its exclusion request and was waiting for the memorandum decision from Commerce. Next, SXP claims that Commerce's "incorrect instruction caused SXP to not assert the claim at the time of entry[.]" *Id.* at 10. As discussed above, in the Section 232 exclusion process, after obtaining an exclusion determination from Commerce, an importer must determine whether and when to request

16

that CBP apply that decision memorandum to a given entry. This false statement likewise flies in the face of the fact that, as SXP acknowledges, it first requested the exclusion from Commerce on April 26, 2019, just a few days before it began entering its merchandise on April 30, 2019. *See* Def.'s Mot. to Dismiss at 5. It was not until after SXP had entered all of its merchandise at issue that Commerce granted SXP's exclusion request. Therefore, there was no instruction at all from Commerce, and certainly no "incorrect instruction," that could have "caused SXP to not assert the claim at the time of entry."

In sum, SXP "had an adequate remedy for its alleged erroneous liquidation, but it lost that remedy because its protest was untimely, not because the remedy was inadequate." *Carbon Activated Corp. v. United States*, 6 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2014), *aff'd*, 791 F.3d 1312 (Fed. Cir. 2015); *see also, ARP Materials*, 47 F.4th 1370.

## III.   THE APA DOES NOT PERMIT MONEY JUDGMENTS AS A SUBSTITUTE FOR A SUFFERED LOSS

Under binding Federal Circuit precedent, SXP had to take administrative action to prevent the liquidation of its entries from becoming final and non-reviewable. Because it failed to do so, SXP now attempts an end-run around the jurisdictional predicates of this Court by attempting to distinguish the relief sought in this subsection (i) case as "money damages" from the reliquidations it sought in the (a) case. SXP cannot have it both ways, especially since the law provides that residual (i) jurisdiction is only available when another means of jurisdiction is inadequate. On the one hand, SXP sued for a refund and joined the Government in seeking the stipulated judgment for a refund of duties subject to the Court's section 1581(a) jurisdiction, while at the same time arguing that this Court

should exercise its jurisdiction under section 1581(i) to enter "a money judgment from the United States under 28 U.S.C. § 1581(i)" for those entries that SXP failed to timely protest. Pl.'s Resp. to Def.'s Mot. to Dismiss at 2-3. But even if SXP could invoke this Court's jurisdiction under section 1581(i) (if section 1581(a) were manifestly inadequate in this case, which it is not, as discussed above), that would necessarily be a claim under the Administrative Procedure Act (APA). 28 U.S.C. §§ 2631(i), 2640(e); *Motion Systems Corp. v. Bush*, 342 F. Supp. 2d 1247, 1258 (Ct. Int'l Trade 2004) *aff'd*, 437 F.3d 1356 (Fed. Cir. 2006) ("For cases brought under 28 U.S.C. § 1581(i), 28 U.S.C. § 2640 refers this court to the APA, providing that the court 'shall review the matter as provided in section 706 of title 5.'"); *see also*, Compl., Count I.

The APA instructs courts reviewing agency action to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and, where appropriate, to "hold unlawful and set aside agency action, findings, and conclusions," *id.* § 706(2). A § 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The "limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* at 65. Section 706(2) gives courts the power to "set aside agency action, findings, and conclusions," which is typically understood as a directive to vacate or invalidate the rule or order at issue. *See Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989) ("When a court finds that an agency regulation is invalid in substantial part, and that the

invalid portion cannot be severed from the rest of the rule, its typical response is to vacate the rule and remand to the agency.").

SXP, however, cannot assert a valid APA claim against the Government because its claim as to Commerce is now moot with the issuance of the corrected decision memorandum and SXP does not and cannot allege, as would be required to assert such a claim, *see* 5 U.S.C. §§ 702-706, that CBP violated any statute or regulation, acted arbitrarily or capriciously, or that its decision was unsupported by substantial evidence. Under the structure of Section 232 exclusions, duty refunds are provided by CBP at or after importation, where CBP determines that the imported merchandise matches that described in the decision memorandum.

It is undisputed that at the time of liquidation, the HTSUS classification and duty rate applied by CBP was in accordance with the information submitted by SXP with respect to the entries at issue.  Once again, SXP simply failed to abide by the statutory prerequisites and CBP guidance requiring importers to extend or protest liquidation in order to request that CBP apply an exclusion decision, even when the exclusion is granted after the protest period has expired.  Therefore, the only refund of Section 232 duties available to SXP was through its action under section 1581(a), as discussed above. Section 1581(i) does not "create[] a cause of action independent of the APA."  *Michael Simon Design, Inc. v. United States*, 609 F.3d 1335, 1340 n.1 (Fed. Cir. 2010); *see also* H.R. Rep. No. 96-1235, 47 (1980), 1980 U.S.C.C.A.N. 3729, 3759 ("Subsection (i) is... not [intended] to create any new causes of action not founded on other provisions of law").

SXP contends that this case is somehow different than *VoestAlpine*, where the court denied the plaintiffs' sought remedy of "court-ordered reliquidation to obtain a refund of section 232 duties paid in connection with the entries in each case." *VoestAlpine USA Corp. v. United States*, 578 F. Supp. 3d 1263, 1266 (Ct. Int'l Trade 2021). SXP argues that in contrast to the reliquidations requested by the plaintiffs in *VoestAlpine*, SXP "has asked this Court to order the United States to pay a money judgment in the amount of the duties SXP paid due to the error by BIS." Pl.'s Resp. to Def.'s Mot. to Dismiss at 7-8, citing Compl., Prayer for Relief. SXP contends that it "is not seeking a corrected exclusion letter to facilitate reliquidation, which is unnecessary where the relief [requested] is a money judgment." *Id.* at 8. Nevertheless, SXP seeks a refund for the Section 232 duties it paid on its four remaining entries for which liquidation is final. *VoestAlpine* rejected any refund of Section 232 duties due to plaintiffs' failure to diligently protect their ability to apply an exclusion to their entries, similar to SXP here. *VoestAlpine*, 578 F.Supp.3d at 1279 ("Absent presentation of an approved exclusion to CBP, the legal requirement to pay duties on merchandise subject to section 232 duties remained. In sum, Plaintiffs' complaints fail to state a claim upon which the court can grant relief beyond BIS's grant of the corrected exclusions.").

SXP concedes that its action here is founded in the APA (Pl.'s Resp. to Def.'s Mot. to Dismiss at 18), which explicitly excludes certain forms of judicial relief. First, the APA does not provide a cause of action for "money damages." 5 U.S.C. § 702. There are, of course, situations where the effect of relief under the APA is the disbursement of money, typically because it is required by law. What the APA prohibits, however, is an award of money "given to the plaintiff to substitute for a suffered loss."

*Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (quoting *Maryland Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)); *see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 263 (1999) (characterizing *Bowen* as distinguishing between specific and substitute relief); *Armendariz–Mata v. U.S. Dep't of Justice, Drug Enforcement Admin.*, 82 F.3d 679, 682 (5th Cir. 1996) ("[W]hen the substance of the complaint at issue is a claim for money damages, the case is not one covered by [the APA], and, hence, sovereign immunity has not been waived." (citation omitted)).  SXP's attempt to couch its request for a refund of duties—relief that was available via a timely protest and reliquidation of its entries—as a request for a "money judgment," is a thinly veiled attempt to bypass the Government's limited waiver of sovereign immunity under the APA and the jurisdictional predicates of this Court.

The APA also generally prohibits "specific relief," in the sense that, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Inds., Inc. v. United States*, 52 F.3d 363 (D.C. Cir. 1995); *see also Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005); *but see Alvarado Cmty. Hosp. v. Shalala*, 155 F.3d 1115, 1125 (9th Cir. 1998) (ordering specific relief on remand).  Here, SXP acknowledges that Commerce has issued a corrected decision memorandum.  Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.  There is therefore nothing to remand to the agency and, accordingly, the case should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, this Court should grant the Government's motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney In Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Kenneth Kessler
Senior Counsel
Office of the Chief Counsel
Bureau of Industry & Security
U.S. Department of Commerce

Mathias Rabinovitch
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated:  January 27, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply memorandum in further support of defendant's motion to dismiss, dated January 27, 2023, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 6,387 words.

<u>/s/ Guy Eddon</u>